1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | | |
|---|---|---|
| SAN DIEGO COASTKEEPER, a California non-profit corporation, COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a California non-profit corporation,<br><br>            Plaintiffs,<br>v.<br><br>PALOMAR TRANSFER STATION, INC., a California corporation, and COAST WASTE MANAGEMENT, INC., a California corporation,<br><br>            Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 19cv957 JM(LL)<br><br>ORDER ENTERING CONSENT DECREE AND FINAL JUDGMENT<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*) |

## CONSENT DECREE

The following Consent Decree (or "Agreement") is entered into by and between San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF") (collectively, "Plaintiffs") and Coast Waste Management, Inc., and Palomar Transfer Station, Inc. (collectively, "Defendants"). The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties."

**WHEREAS**, Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS**, Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS**, CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS**, CERF contends it was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and contends that one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS**, Palomar Transfer Station, Inc. leases the facility located at 5960 El Camino Real, Carlsbad, California, 92008, hereinafter referred to by the Parties as the "Palomar Transfer Station" or "PTS Facility," and subleases a portion of the PTS Facility to Coast Waste Management, Inc.

**WHEREAS**, Palomar Transfer Station, Inc. operates a waste transfer station and storage area at the PTS Facility; and Coast Waste Management, Inc. operates a recycling buy back center, maintenance building, overnight truck and/or equipment parking lot, and storage area at the PTS Facility;

**WHEREAS**, Plaintiffs contend that their members live and/or recreate in and around waters which Plaintiffs' members allege receive discharges from the PTS Facility,

1  including specifically Canyon de las Encinas Creek, Agua Hedionda Creek, Agua
2  Hedionda Lagoon, and eventually the Pacific Ocean;

3     **WHEREAS**, the discharges from the PTS Facility are regulated by the National
4  Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001
5  [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended
6  by Order No. 97-03-DWQ ("1997 Storm Water Permit"), and as amended by Order No.
7  2014-0057-DWQ ("2014 Storm Water Permit"), and the Federal Water Pollution Control
8  Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

9     **WHEREAS**, on May 3, 2018, Plaintiffs sent Defendants, the United States
10  Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources
11  Control Board ("State Board"), and the San Diego Regional Water Quality Control Board
12  ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a)
13  and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged
14  violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations
15  of the 1997 and 2014 Storm Water Permits at the PTS Facility;

16     **WHEREAS**, on May 22, 2019, Plaintiffs filed a complaint against Defendants in
17  the United States District Court, Southern District of California (Case No. 3:19-cv-00957-
18  JM-LL), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a),
19  and violations of the 1997 and 2014 Storm Water Permits at the PTS Facility
20  ("Complaint");

21     **WHEREAS**, Plaintiffs allege Defendants to be in violation of the substantive and
22  procedural requirements of the 1997 Storm Water Permit, the 2014 Storm Water Permit,
23  and the Clean Water Act with respect to the PTS Facility;

24     **WHEREAS**, Defendants deny all allegations in the Notice Letter and Complaint
25  relating to the PTS Facility;

26     **WHEREAS**, Plaintiffs and Defendants have agreed that it is in the Parties' mutual
27  interest to enter into a Consent Decree setting forth terms and conditions appropriate to
28  resolving the allegations set forth in the Complaint without further proceedings;

1    **WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall
2    be made in compliance with all applicable federal and state laws and local rules and
3    regulations.

4    **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**
5    **PARTIES AND ORDERED AND DECREED BY THE COURT AS**
6    **FOLLOWS:**

7    1.    The Court has jurisdiction over the subject matter of this action pursuant to
8    Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

9    2.    Venue is appropriate in the Southern District of California pursuant to Section
10   505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the PTS Facility is
11   located within this District;

12   3.    The Complaint states claims upon which relief may be granted pursuant to
13   Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

14   4.    Plaintiffs have standing to bring this action;

15   5.    The Court shall retain jurisdiction over this matter for purposes of enforcing
16   the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as
17   is necessary for the Court to resolve any motion to enforce this Consent Decree.

18   **I.    OBJECTIVES**

19   6.    It is the express purpose of the Parties entering into this Consent Decree to
20   further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to
21   resolve those issues alleged by Plaintiffs in their Complaint.  In light of these objectives
22   and as set forth fully below, Defendants agree to comply with the provisions of this Consent
23   Decree and to comply with the requirements of the 2014 Storm Water Permit and all
24   applicable provisions of the Clean Water Act.  Specifically, Defendants agree to comply
25   with Receiving Water Limitation VI.A. in the 2014 Storm Water Permit which requires
26   that Defendants "shall ensure that industrial storm water discharges and authorized Non-
27   Storm Water Discharges ("NSWDs") do not cause or contribute to the exceedance of any
28   applicable water quality standards in any affected receiving water," and Effluent Limitation

---

Consent Decree                           4                    Civil Case No. 3:19-cv-00957-JM-LL

1  V.A. of the 2014 Storm Water Permit which requires that Defendants "shall implement
2  Best Management Practices ("BMPs") that comply with the [Best Available Technology
3  Economically Achievable ("BAT") and the Best Conventional Treatment Technology
4  ("BCT")] requirements of the [2014 Storm Water Permit] to reduce or prevent discharges
5  of pollutants in [Defendants'] storm water discharge in a manner that reflects best industry
6  practice considering technological availability and economic practicability and
7  achievability."

8  **II.    AGENCY REVIEW AND TERM OF CONSENT DECREE**

9      7.     Plaintiffs shall submit this Consent Decree to the United States Department
10  of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final
11  signature of the Parties for agency review consistent with 40 C.F.R. § 135.5. The agency
12  review period expires forty-five (45) days after receipt by both agencies, as evidenced by
13  written acknowledgement of receipt by the agencies or the certified return receipts, copies
14  of which shall be provided to Defendants if requested.  In the event that the Federal
15  Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to
16  attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount
17  of time.  If the Parties are unable to modify this Consent Decree in a mutually acceptable
18  manner that is also acceptable to the District Court, this Consent Decree shall immediately
19  be null and void as well as inadmissible as a settlement communication under Federal Rule
20  of Evidence 408 and California Evidence Code section 1152.

21      8.     The term "Effective Date" as used in this Consent Decree shall mean the day
22  the Court enters this Consent Decree.

23      9.     This Consent Decree shall terminate three (3) years after the Effective Date
24  unless Early Termination is triggered pursuant to paragraph 10 of this Agreement (the
25  earlier of which shall be the "Termination Date" as used in this Consent Decree).

26      10.    This Consent Decree will terminate early ("Early Termination") in the
27  following circumstances:

28          10.1  As to a Defendant if that Defendant ceases its operations at the PTS

---

facility, transfers its operations at the PTS Facility to another entity, is no longer subject to the 2014 Storm Water Permit, or files a Notice of Termination via the State Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") pursuant to the 2014 Storm Water Permit section II.C.1, and the Notice of Termination is accepted by the State or Regional Board; or

        10.2   Otherwise by mutual agreement of the Parties.

    11.   Plaintiffs may conduct an inspection of the PTS Facility up to forty-five (45) days prior to the Termination Date. The inspection shall be conducted according to the rules applicable to Annual Site Inspections described in paragraphs 27 and 28 below.

    12.   If, once the adopted 2018 Storm Water Permit Amendments become effective (currently scheduled for July 1, 2020), Defendants implement and are in compliance at the PTS Facility with either the "On-Site Compliance Option" or "Off-Site Compliance Option," as defined and detailed in Attachment I of the 2018 Storm Water Permit Amendments, Defendants will no longer have to meet the requirements of Section III.C of this Consent Decree so long as they maintain compliance with either of those options at the PTS Facility.

## III.   COMMITMENTS OF THE PARTIES

**A.   Storm Water Pollution Control Best Management Practices.**

    13.   Defendants shall maintain and/or develop and implement appropriate Best Management Practices ("BMPs") necessary to comply with the Storm Water Permit.

    14.   The BMPs that Defendants plan to maintain and/or develop and implement for the PTS Facility as part of this Agreement are described in <u>Exhibit A</u>.

**B.   Discharge Locations and Storm Water Sampling.**

    15.   <u>Discharge Locations</u>. The current storm water sample locations ("Discharge Locations") for the PTS Facility are identified in <u>Exhibit B</u>. Should the Discharge Locations change from what is presently depicted on Exhibit B, Defendants will provide Plaintiffs with an updated exhibit.

    16.   <u>Sampling</u>. The following storm water monitoring procedures shall be

1    implemented at the PTS Facility:

2          16.1    Frequency. During the life of this Agreement, Defendants shall collect
3    samples from all Discharge Locations at the PTS Facility from a minimum of four (4)
4    "qualified storm events" ("QSEs"), as defined by the 2014 Storm Water Permit, that occur
5    in a "Reporting Year," as defined by the 2014 Storm Water Permit, such that Defendants
6    collect two (2) samples during the first half of the Reporting Year and two (2) samples
7    during the second half of the Reporting Year.  If, prior to March 1, Defendants have
8    collected samples from two (2) or fewer QSEs during that Reporting Year, Defendants
9    shall collect samples during as many QSEs as necessary until a minimum of 4 storm events
10   have been sampled for the Reporting Year, if feasible.  No two (2) samples may be from
11   the same QSE.

12         16.2    Contained or Stored Storm Water. Defendants shall sample stored or
13   contained storm water discharges from Discharge Locations at the PTS Facility, if any,
14   pursuant to Section XI.B.4 of the 2014 Storm Water Permit.

15         16.3    Parameters. Defendants shall analyze each storm water sample
16   collected from a Discharge Location, pursuant to paragraph 16.1 or 16.2, for the parameters
17   set forth in the below Table 1 Numeric Levels.

18         16.4    Laboratory. A laboratory accredited by the State of California shall
19   analyze all samples collected pursuant to this Agreement.

20         16.5    Detection Levels. Defendants shall request that the laboratory use
21   analytical methods adequate to detect the individual contaminants at or below Table 1
22   Numeric Levels.

23         16.6    Hold Time. All samples collected from the PTS Facility shall be
24   delivered to the laboratory as necessary, using reasonable best efforts, to ensure that sample
25   "hold time" is not exceeded for each contaminant sampled.

26         16.7    Results. Defendants shall request that sample analysis results be
27   reported to them as soon as possible without incurring "rush" charges.

28         16.8    Reporting. Defendants shall provide Plaintiffs with the complete

1  laboratory results, including a copy of the Quality Assurance/Quality Control and the
2  laboratory report for all samples described and taken in accordance with the samples
3  identified in paragraphs 16.1 and 16.2 collected at the PTS Facility, within ten (10) business
4  days of receiving the results.

5  **C.    Reduction of Pollutants in Discharges.**

6      17.    Contaminant Reduction. Unless otherwise provided by this Agreement,
7  Defendants shall develop and implement BMPs to reduce pollutants in storm water
8  discharges from the PTS Facility to levels at or below those in Table 1 ("Numeric
9  Levels").[1]

**Table 1**

| Pollutant | Numeric Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Total Recoverable Zinc* | 0.26 mg/L |
| Total Recoverable Copper* | 0.0332 mg/L |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | 0.750 mg/L |
| Total Recoverable Iron | 0.3 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Total Recoverable Lead* | 0.262 mg/L |
| Enterococcus | 61 MPN/100 mL |
| Fecal Coliform | 400 MPN/100 mL |
| Chemical Oxygen Demand | 120 mg/L |
| Selenium[2] | 0.005 mg/L |
| Total Phosphorous | 0.1 mg/L |
| pH | 6.5-8.5   s.u. |

*In the case of copper, lead, and zinc, the values listed are the more conservative of the NALs and

[1] The Numeric Levels for metals marked with an asterisk are hardness dependent. Metal constituents will be removed from Table 1 if the PTS Facility's storm water sampling under this Consent Decree results in non-detect levels for the metal constituent at all Discharge Locations for two (2) consecutive sampled discharges from QSEs.

[2] A storm water discharge sample taken at the PTS Facility during a QSE pursuant to the 2014 Storm Water Permit during the second half of the 2018-2019 Reporting Year showed Selenium was not detected. Plaintiffs agree if Selenium is not detected during the next consecutive sample from a QSE, then Selenium will be removed from Table 1 in this Consent Decree.

the hardness-adjusted California Toxics Rule values.

18.     Action Plan for Table 1 Exceedances. If Defendants' monitoring reveals a single exceedance of a pollutant's Numeric Level at any Discharge Location, and there is not already an Action Plan[3] currently being prepared or in the process of being implemented by Defendants to address or that will address that pollutant ("Action Plan Triggering Event"), Defendants shall prepare an Action Plan for the PTS Facility for reducing the Numeric Level of that pollutant.[4]  When required, a proposed Action Plan must be submitted to Plaintiffs within forty-five (45) days after Defendants receive the laboratory results reflecting an Action Plan Triggering Event, unless Defendants request and Plaintiffs agree to an extension, which agreement shall not be unreasonably withheld.

18.1     Action Plan Requirements. The Action Plan shall include at a minimum: (1) the identification of the pollutant(s) causing the Action Plan Triggering Event; (2) an assessment of the potential source of each pollutant discharged that caused the Action Plan Triggering Event; (3) the identification of additional BMPs, if any, that will be designed and implemented for the location(s) of the exceedance discharge in an effort to prevent future exceedances of parameters that triggered the Action Plan (including the possibility of a treatment control BMP, which would be designed to meet the 2014 Storm Water Permit's Design Storm Standard pursuant to Section X.h.6); and (4) time schedules for implementation of proposed BMPs (if any).  Submitting an Action Plan that does not address all of the requirements in this paragraph will be considered a missed deadline after dispute resolution, if any.

18.2     Action Plan Review. Plaintiffs shall have thirty (30) days upon receipt of Defendants' proposed Action Plan to approve or provide comments to Defendants on

---

[3] The Action Plan discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Storm Water Permit.

[4] To the extent there is a dispute between the Parties regarding whether another Action Plan is required for an exceedance of a pollutant when there is already an Action Plan being prepared or in the process of being implemented by Defendants, that dispute shall be resolved pursuant to the Dispute Resolution Procedures under Section VI of this Agreement.

1   the proposed Action Plan.  If Plaintiffs provide Defendants comments on the proposed

2   Action Plan, Defendants shall have thirty (30) days from receipt of Plaintiffs' comments,

3   unless Defendants request and Plaintiffs agree to an extension, which agreement shall not

4   be unreasonably withheld, to either incorporate Plaintiffs' material comments into the

5   Action Plan and seek Plaintiffs' approval of the modified Action Plan or another round of

6   comments if mutually agreed, or, if Defendants decline to accept one or more of Plaintiffs'

7   material comments, provide Plaintiffs with a written explanation of the grounds for such

8   rejection.  Any disputes over the Action Plan, including any requested extensions, shall be

9   resolved pursuant to the Dispute Resolution Procedures of this Agreement, set out in

10  Section VI below.  Defendants shall not be required to begin implementation of any Action

11  Plan until Plaintiffs have approved the Action Plan, until the dispute over the Action Plan

12  has been resolved through the Dispute Resolution Procedures, or until mutual agreement

13  of the Parties, whichever is later ("Implementation Triggering Event").

14          18.3   Action Plan Implementation Timeline.  The time schedule(s) for

15  implementation of BMPs pursuant to any Action Plan shall ensure that all BMPs are

16  implemented as soon as possible.  Unless the Parties agree during the Action Plan Review

17  process to a longer time period based on the time needed to design, permit, procure, and/or

18  install the necessary equipment, Defendants will implement new BMPs in an Action Plan

19  within three (3) months of the Implementation Triggering Event for BMPs not requiring

20  permitting or approval from agencies or other necessary parties (including, but not limited

21  to, City of Carlsbad and the County of San Diego), and within six (6) months of the

22  Implementation   Triggering   Event   for   BMPs   requiring   permitting   or   approval

23  ("Presumptive Implementation Deadlines").  If Defendants' Action Plan includes BMPs

24  which require QSE sampling for calibration pursuant to paragraph 18.3.1, the Action Plan

25  implementation timeline shall indicate that discharge monitoring is necessary and will take

26  place when the first QSE following completion of the BMP occurs.  To the extent

27  Defendants believe they need additional time beyond the Presumptive Implementation

28  Deadlines to complete the implementation of new BMPs pursuant to an Action Plan, or to

1    the extent that, pursuant to paragraph 40, Defendants' performance within the Presumptive
2    Implementation Deadlines is impossible, illegal, or otherwise prevented by circumstances
3    beyond the Defendants' control, including due to Force Majeure, Defendants will request
4    in writing an extension from Plaintiffs.  Plaintiffs agree that they will not unreasonably
5    withhold agreement to extend any implementation deadlines.  Any disputes over the Action
6    Plan implementation timeline, including any requested extensions, shall be resolved
7    pursuant to the Dispute Resolution provisions of this Agreement, set out below in Section
8    VI of this Agreement.

9            18.3.1.  <u>Action Plan QA/QC</u>. If necessary, any BMP quality assurance
10   and quality control ("QA/QC"), including QSE sampling required to calibrate advanced
11   treatment BMPs, shall occur before the Presumptive Implementation Deadline, if feasible.
12   In the event a QSE does not occur after the Action Plan BMPs are fully operational and
13   before expiration of the Presumptive Implementation Deadline (or any mutually agreed
14   upon extension thereto), Defendants' Presumptive Implementation Deadline shall be
15   automatically extended until the earlier of: (1) 30 days after the next QSE after the
16   Presumptive Implementation Deadline, or (2) the date of receipt of laboratory results from
17   samples taken during the next QSE after the Presumptive Implementation Deadline.  Any
18   Table 1 exceedances occurring prior to the Presumptive Implementation Deadline, prior to
19   any automatic extensions under this paragraph, or prior to any mutually agreed upon
20   extension, shall not constitute an Action Plan Triggering Event.

21           18.4  Disputes regarding the adequacy of a particular aspect of the Action
22   Plan shall not impact the schedule for implementing any other unrelated aspect of the
23   Action Plan.  Any disputes as to the adequacy of the Action Plan shall be resolved pursuant
24   to the Dispute Resolution provisions of this Agreement, set out in Section VI below, which
25   shall not be subject to stipulated penalties.

26           19.  Defendants shall contact Plaintiffs to request an extension of any deadline set
27   forth in this Agreement, if necessary, prior to the deadline at issue.  Failure to request an
28   extension, if necessary, in this timeframe will be considered a missed deadline.  Plaintiffs'

1    consent to Defendants' requested extension shall not be unreasonably withheld.

2        20.   Defendants shall revise their Storm Water Pollution Prevention Plans
3    ("SWPPPs") and/or Monitoring & Reporting Plans ("M&RP"), if applicable, within forty-
4    five (45) days of completion and implementation of additional BMPs set forth in the Action
5    Plan.   Defendants shall notify Plaintiffs via email when the Action Plan has been
6    completely implemented, and the SWPPP and/or M&RP have been revised, if such
7    revisions are necessary.

8    **D.**   **Visual Observations.**

9        21.   Until the Termination Date of the Agreement, Defendants shall conduct and
10   document visual observations required by the Storm Water Permit and as more fully
11   described in the PTS Facility SWPPP.

12   **E.**   **Employee Training.**

13       22.   Within sixty (60) days of the Effective Date, Defendants shall conduct
14   employee training in order to familiarize employees at the PTS Facility with the
15   requirements of the Storm Water Permit and this Agreement.   The training program shall
16   include, in particular, the requirements that are contained in this Agreement.

17   **F.**   **Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

18       23.   Within ninety (90) days of the Effective Date of this Agreement, Defendants
19   shall revise the PTS Facility's SWPPP and/or M&RP as applicable to include:

20           23.1   BMPs that are currently utilized at the PTS Facility;

21           23.2   BMPs identified, developed, and implemented pursuant to this
22   Agreement and/or the Storm Water Permit;

23           23.3   The specific individual(s) or position(s) responsible for compliance
24   with the Storm Water Permit;

25           23.4   A detailed site map that includes at a minimum all information required
26   by the Storm Water Permit; and

27           23.5   A description of each industrial activity, potential pollutant sources,
28   and each potential pollutant associated with each industrial activity and/or pollutant source.

24.    Plaintiffs shall provide reasonable and material comments, if any, to Defendants within thirty (30) days of receipt of any revised SWPPP and M&RP. Within forty-five (45) days of receiving comments from Plaintiffs, Defendants shall incorporate Plaintiffs' reasonable and material comments into any revised SWPPP and/or M&RP or shall justify in writing to Plaintiffs why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or M&RP shall be resolved pursuant to the Dispute Resolution Procedures of this Agreement set forth in Section VI below.

25.    Additional and Ongoing Revisions to SWPPP and/or M&RP. Defendants shall revise their SWPPPs and/or M&RPs if there are any material changes in the PTS Facility's operations that may possibly affect the quality of storm water discharges at the PTS Facility, including but not limited to changes to storm water Discharge Location(s) or changes or additions to the BMPs at the PTS Facility resulting from an Action Plan. Plaintiffs may review and comment on the revised SWPPP and/or M&RP if a significant revision has been made, e.g., change or reduction of Discharge Locations, implementation of advanced BMPs, removal of a constituent to be sampled, etc. Defendants will incorporate Plaintiffs' reasonable and material comments concerning material and significant revisions into any revised SWPPP and/or M&RP or shall justify in writing why any comment is not incorporated.

26.    Future Pollutant Source Assessments. Defendants may remove a constituent from their PTS Facility's SWPPP and M&RP and from Table 1 in this Agreement if new information becomes available supporting an amended SWPPP pollutant source assessment relating to the constituent, including—consistent with Sections XII.D.2.b and c of the 2014 Storm Water Permit—a demonstration that (a) a Numeric Level exceedance(s) is attributable solely to the presence of non-industrial pollutant sources, or to the presence of the pollutant in the natural background that has not been disturbed by industrial activities, or (b) where the pollutant is also present due to industrial activities, the pollutant contribution from the industrial activities by itself does not result in a Numeric Level exceedance(s), and the following is satisfied: (i) Defendants submit a written

1    evaluation in support of the amended SWPPP pollutant source assessment determination
2    to a mutually agreed upon third-party consultant for review; and (ii) the third party
3    consultant subsequently concurs with Defendants' evaluation.    Defendants shall be
4    responsible for all expenses related to the assessment review and determination.    If
5    Plaintiffs have conducted their Annual Site Inspection (per paragraph 27 below) prior to
6    submission of the written evaluation, Plaintiffs shall be provided an opportunity to conduct
7    an additional site inspection to support their written response prior to submission of the
8    issue to the third-party consultant.

9    ## IV.    COMPLIANCE MONITORING AND REPORTING

10    27.    Annual Site Inspections. Each Reporting Year until the Termination Date of
11    this Agreement, Plaintiffs and their representatives may conduct up to one (1) noticed site
12    inspection per Reporting Year ("Annual Site Inspection"). The Annual Site Inspection shall
13    be limited to (1) an inspection of the storm water pollution prevention systems, including
14    BMPs, improvements, and industrial operations that come into contact with storm water;
15    and (2) collection of storm water samples from QSEs that result in a discharge at a
16    Discharge Location. The Annual Site Inspection shall occur during normal business hours,
17    and Plaintiffs shall provide Defendants with three (3) business days' notice of an intended
18    inspection. Plaintiffs will confirm with Defendants at least twenty-four (24) hours prior to
19    the start of an Annual Site Inspection that there is sufficient rainfall such that Plaintiffs
20    intend to conduct their Annual Site Inspection during a QSE. Plaintiffs will make efforts
21    to conduct their Annual Site Inspection during a QSE, but a lack of a QSE will not prevent
22    Plaintiffs from conducting an Annual Site Inspection. During all Annual Site Inspections,
23    Plaintiffs' representatives shall wear safety goggles, hard hats, vests, steel toed boots, and
24    any other appropriate personal protective equipment and remain in the presence of
25    Defendants' representatives at all times and Plaintiffs shall sign a standard Release and
26    Waiver Agreement with Defendants, including but not limited to, covering any personal
27    injury or damage that Plaintiffs, their representatives, or assigns could incur during or as a
28    result of an Annual Site Inspection, and limiting use of videographic, photographic, or

1   other recordings to the Dispute Resolution Process.  Plaintiffs' inspection team shall consist
2   of no more than six (6) persons.  Notice of any inspection under this paragraph shall be
3   provided by telephone and electronic mail to all of the following individuals for each
4   Defendant:

6   For Palomar Transfer Station, Inc.:

Neil Mohr
General Manager
Republic Services
(619) 449-9026
nmohr@republicservices.com

Judith George / Tom Ulreich-Power
General Counsel's Office
Republic Services
(480) 493-1738
Jgeorge4@republicservices.com
Tulreich@republicservices.com

Tom Bruen
Law Offices of Thomas M. Bruen, P.C.
(925) 295-3137
tbruen@tbsglaw.com

For Coast Waste Management, Inc.

Catherine Riegle Finley, Esq.
Senior Legal Counsel
Waste Management
(818) 252-3141
CRiegle@wm.com

Ken Ryan
District Manager
Coast Waste Management, Inc.
(760) 268-7157
KRyan@wm.com

1  Kimberly Bick
   Bick Law LLP
2  (949) 432-3502
3  kbick@bicklawllp.com

4      28.    During the Annual Site Inspection, Plaintiffs and/or their representatives shall

5  be allowed access to the PTS Facility's SWPPPs and M&RPs.  In addition, during the

6  Annual Site Inspection, Plaintiffs and/or their representatives may collect split samples of

7  discharges from QSEs at the PTS Facility, consistent with the sampling requirements of

8  the Storm Water Permit.  Plaintiffs shall provide Defendants with properly preserved split

9  samples.  Plaintiffs shall submit any samples collected by them or their representatives to

10 a certified California laboratory for analysis.  Any onsite measurements by Plaintiffs such

11 as pH shall be taken by a properly trained operator with properly calibrated instruments.

12 Defendants shall have an opportunity to take concurrent measurements using their own

13 equipment.  Copies of the complete laboratory reports shall be provided to Defendants

14 within ten (10) business days of receipt.  Plaintiffs shall bear all costs of inspection,

15 sampling, and analysis.

16     29.    Reporting and Documents. Until the Termination Date of this Agreement,

17 Defendants shall copy Plaintiffs on all final documents related to storm water discharges

18 at the PTS Facility that are required to be submitted by the Storm Water Permit and are

19 submitted to the Regional Board and/or State Board, and/or any State or local agency or

20 municipality.  Such reports and documents shall be provided to Plaintiffs concurrently as

21 they are sent to the agencies and/or municipalities.  Until the Termination Date of the

22 Agreement, any material correspondence related to Defendants' compliance with the Storm

23 Water Permit or storm water discharges received by any Defendant from any regulatory

24 agency, State or local agency, county or municipality shall be provided to Plaintiffs within

25 ten (10) business days of receipt by Defendant(s).

26     30.    Compliance Monitoring and Oversight. Defendants together shall pay a

27 combined total of Ten Thousand dollars ($10,000) to compensate Plaintiffs for costs and

28 fees to be incurred for monitoring the PTS Facility's compliance with this Agreement,

Consent Decree                          16                      Civil Case No. 3:19-cv-00957-JM-LL

1   including, but not limited to, anticipated costs and fees related to Annual Site Inspections.
2   Payment shall be made within thirty (30) days of the Effective Date payable to Coastal
3   Environmental Rights Foundation via certified U.S. Mail or commonly accepted carrier to
4   1140 South Coast Highway 101 Encinitas, California 92024.

5        31.   <u>Action Plan Payment</u>. Defendants together shall pay a combined total of Five
6   Thousand dollars ($5,000) per Action Plan, deemed to be full payment for all of Plaintiffs'
7   costs to review and comment on any Action Plan submitted.  Payment shall be made within
8   thirty (30) days of the submittal of an Action Plan and payable to Coastal Environmental
9   Rights Foundation via certified U.S. Mail or commonly accepted carrier to 1140 South
10  Coast Highway 101 Encinitas, California 92024.

11  **V.     Environmental Project, Reimbursement of Fees and Costs, and Stipulated**
12  **Payments**

13       32.   <u>Environmental Project</u>. To remediate the alleged environmental harms
14  resulting from non-compliance with the Storm Water Permit alleged in the Complaint,
15  Defendants together agree to make a combined total payment of Twenty Five Thousand
16  dollars ($25,000) to Preserve Calavera to fund environmental project activities that will
17  reduce or mitigate the impacts of storm water pollution from industrial activities on the
18  Southern California Bight and its tributaries.  Payment shall be made payable to: Preserve
19  Calavera via certified U.S. Mail to Diane Nygaard 5020 Nighthawk Way, Oceanside, CA
20  92056 within thirty (30) days of the Effective Date of this Agreement.  Any Party may
21  request an end-of-expenditure update from Preserve Calavera.

22       33.   <u>Reimbursement of Coast Law Group's Fees and Costs</u>. Defendants together
23  shall pay a combined total of Seventy-Thousand dollars ($70,000) to Coast Law Group,
24  LLP  and  San  Diego  Coastkeeper  to  reimburse  investigation  fees  and  costs,
25  expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of
26  investigating and preparing the lawsuit and negotiating this Agreement.  Payments shall be
27  made within thirty (30) days of the Effective Date and payable to: Coast Law Group, LLP,
28  Attn: Livia Borak Beaudin via certified U.S. Mail or commonly accepted carrier to 1140

1 | South Coast Highway 101 Encinitas, California 92024.

2 |      34.   <u>Stipulated Payments</u>. Defendants together shall make a combined remediation

3 | payment of One Thousand Five Hundred dollars ($1,500.00) as the sole remedy for each

4 | missed deadline included in this Agreement, not excused by Force Majeure or agreement

5 | by Plaintiffs.  Payments for a missed deadline shall be used to fund environmental project

6 | activities that will benefit the Southern California Bight and its tributaries.  Defendants

7 | shall have thirty (30) days from notification to cure any missed deadline (i.e., submit the

8 | outstanding deliverable) or, in the alternative, invoke the Dispute Resolution Procedures

9 | set forth in Section VI below.  Unless Dispute Resolution Procedures have been invoked,

10 | Defendants agree to make the stipulated payment within thirty (30) days of notification of

11 | a missed deadline to Preserve Calavera via U.S. Mail to Diane Nygaard 5020 Nighthawk

12 | Way, Oceanside, CA 92056.  Defendants shall provide Plaintiffs with a copy of each such

13 | payment at the time it is made.

14 | **VI.**    **DISPUTE RESOLUTION**

15 |      35.   This Court shall retain jurisdiction over this matter until the Termination Date

16 | for the purposes of implementing and enforcing the terms and conditions of this Agreement

17 | and adjudicating all disputes among the Parties that may arise under the provisions of this

18 | Agreement.  The Court shall have the power to enforce this Agreement with all available

19 | legal and equitable remedies, including contempt.

20 |      36.   <u>Meet and Confer</u>. A Party to this Agreement shall invoke the dispute

21 | resolution procedures ("Dispute Resolution Procedures") of this Section by notifying all

22 | other Parties in writing of the matter(s) in dispute.  The Parties shall then meet and confer

23 | in good faith (either telephonically or in person) in an attempt to resolve the dispute

24 | informally over a period of ten (10) business days from the date of receipt of the notice.

25 | Parties may elect to extend this time in an effort to resolve the dispute without court

26 | intervention.

27 |      37.   <u>Formal Dispute Resolution</u>. If the Parties cannot resolve a dispute by the end

28 | of meet and confer informal negotiations, the Party initiating the Dispute Resolution

1  Procedures may invoke formal dispute resolution ("Formal Dispute Resolution") by filing
2  a motion before the United States District Court for the Southern District of California.
3  The Parties agree to request an expedited hearing schedule on the motion if requested by
4  any Party.  The Formal Dispute Resolution process described in this Section VI shall be
5  the sole and exclusive remedy for judicially resolving and enforcing any and all disputes
6  between the Parties regarding the subject matter of this Consent Decree.

7      38.    Burden of Proof. The burden of proof for Formal Dispute Resolution shall be
8  in accordance with applicable law.

9          38.1   In the event of any disagreement or dispute between Plaintiffs and
10  Defendants over the necessity or appropriateness of implementing any particular BMP or
11  set of BMPs, Defendants shall bear the burden of demonstrating that their BMPs,
12  collectively, constitute BAT/BCT for the PTS Facility, or that they are in compliance with
13  the terms of this Agreement.

14     39.    Costs and Fees. The Parties shall be entitled to seek fees and costs incurred in
15  filing or opposing any motion made to the Court for the purpose of Formal Dispute
16  Resolution in Section VI, according to the costs and fees provisions set forth in the Section
17  505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting
18  such provisions.

19     40.    Force Majeure. No Party shall be considered to be in default in the
20  performance of any of its obligations under this Agreement when performance becomes
21  impossible, illegal, or is prevented by circumstances beyond the Party's control, including
22  Force Majeure, which includes any act of god, war, fire, earthquake, windstorm, flood or
23  natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court
24  order or by any public authority or agency; inability to proceed due to pending litigation
25  under the California Environmental Quality Act; action or non-action by, or inability to
26  obtain the necessary authorizations, approvals, or permits from, any governmental agency;
27  or inability to obtain equipment or materials from the marketplace if such materials or
28  equipment are not reasonably available, though the cost of such material or equipment is

1   not a factor in whether it is reasonably available; equipment damage that is beyond
2   Defendants' control; and other unforeseeable circumstances beyond the control of the
3   Parties and which the affected Party cannot avoid even by using its best efforts.
4   Impossibility and/or Force Majeure shall not include normal inclement weather. Except in
5   the case of any catastrophic event that precludes normal banking and funds transfers such
6   as emergency closing of the Federal Reserve Banking system, financial inability to pay for
7   improvements will not be considered to be circumstances beyond Defendants' control.
8   Any Party seeking to rely upon this paragraph to excuse or postpone performance shall
9   have the burden of establishing that it could not reasonably have been expected to avoid
10  the impossibility or Force Majeure event and which by exercise of due diligence has been
11  unable to overcome the failure or performance.  Delay in compliance with a specific
12  obligation under this Agreement due to impossibility and/or Force Majeure as defined in
13  this paragraph shall not excuse or delay compliance with any or all other obligations
14  required under this Agreement.

15          40.1   If Defendants seek to rely upon paragraph 40 to excuse or postpone
16  performance, they shall notify Plaintiffs in writing as soon as possible, but in no event more
17  than fifteen (15) business days of the date that Defendants learn of the event or
18  circumstance that caused or would cause a violation of this Agreement (hereinafter referred
19  to as the "Notice of Nonperformance").  Failure to send a Notice of Nonperformance shall
20  not be a missed deadline.

21          40.2   Within thirty (30) days of sending the Notice of Nonperformance,
22  Defendants shall send Plaintiffs a detailed description of the reason for the nonperformance
23  and the specific obligations under the Agreement that are or have been affected by the
24  Force Majeure.  They shall describe the anticipated length of time the delay may persist,
25  the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent
26  or minimize the delay, the schedule by which the measures shall be implemented, and the
27  anticipated date of compliance.  Defendants shall adopt all reasonable measures to avoid
28  and minimize such delays.  Failure to send such description shall not be a missed deadline.

40.3    The Parties shall meet and confer in good faith concerning the non-performance and, where the Parties concur that Defendants' nonperformance is excused or postponed pursuant to paragraph 40, despite the timely good faith efforts of the Parties, new deadlines shall be established.

40.4    If the Parties disagree on a Notice of Nonperformance, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, or on an extension of time to informally resolve their disagreement, either Party shall have the right to invoke the Dispute Resolution Procedures.  If the disagreement cannot be resolved informally and Formal Dispute Resolution is invoked, Defendants shall bear the burden during Formal Dispute Resolution of proving that any delay in performance of any requirement of this Agreement was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

41.    <u>Plaintiffs' Release</u>. Upon the Effective Date of this Agreement, CERF and Coastkeeper, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, attorneys, and other representatives, release all persons including, without limitation, Defendants (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and/or Complaint and/or the Formal Dispute Resolution Process in Section VI up to the Termination Date of this Agreement, except for fees and costs that may be awarded in connection with the Formal Dispute Resolution Process pursuant to paragraph 39.

42.    <u>Defendants' Release</u>. Upon the Effective Date of this Agreement, Defendants, on their own behalf and on behalf of their current and former officers, directors, employees,

1   members, and each of their successors and assigns, and their agents, attorneys, and other
2   representatives, release Plaintiffs (and their current and former officers, directors,
3   employees, members, direct and indirect parents, subsidiaries, and affiliates, and each of
4   their successors and assigns, and their agents, attorneys, and other representatives) from
5   and waive all claims alleged in this action, including all claims for fees (including fees of
6   attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for
7   matters related to Plaintiffs' Notice Letter and/or Complaint and/or the Formal Dispute
8   Resolution Process in Section VI up to the Termination Date of this Agreement, except for
9   fees and costs that may be awarded in connection with the Formal Dispute Resolution
10   Process pursuant to paragraph 39.

11       43.   Nothing in this Agreement limits or otherwise affects any Party's right to
12   address or take any position that it deems necessary or appropriate in any formal or
13   informal proceeding before the State Board, Regional Board, EPA, or any other
14   administrative body on any other matter relating to Defendants' compliance with the Storm
15   Water Permit or the Clean Water Act occurring or arising after the Effective Date of this
16   Agreement.

17       44.   The Parties acknowledge that they are familiar with section 1542 of the
18   California Civil Code, which provides:

19
20          A general release does not extend to claims that the creditor or releasing party
21          does not know or suspect to exist in his or her favor at the time of executing
       the release and that, if known by him or her, would have materially affected
       his or her settlement with the debtor or released party.
22

23   The Parties hereby waive and relinquish any rights or benefits they may have under
24   California Civil Code section 1542 with respect to any other claims against each other
25   arising from, or related to, the allegations, matters and claims as set forth in the 60-Day
26   Notice for storm water pollution discharges at the PTS Facility and/or this Consent Decree
27   up to and including the Termination Date of this Agreement, except in connection with the
28   Formal Dispute Resolution Process related to violations or breaches of this Agreement.

# VIII.   MISCELLANEOUS PROVISIONS

45.   <u>No Admission of Liability</u>. Neither this Agreement, the implementation of additional BMPs, nor any payment pursuant to the Agreement shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

46.   <u>Construction</u>. The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

47.   <u>Choice of Law</u>. The laws of the United States and of the State of California for state law questions shall govern this Agreement.

48.   <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49.   <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff Coastkeeper</u>:

San Diego Coastkeeper
Attn: Matt O'Malley
2825 Dewey Rd, Suite 207
San Diego, CA 92106
Email: matt@sdcoastkeeper.org

<u>If to Plaintiff CERF</u>:

Coastal Environmental Rights Foundation
Attn: Sara Kent
1140 South Coast Highway 101
Encinitas, CA 92024
Email: sara@cerf.org

1

2

<u>With Copy to</u>:

3  Coast Law Group LLP
    Attn: Livia Beaudin
4  1140 South Coast Hwy 101
    Encinitas, CA 92024
5  Email: livia@coastlawgroup.com

6

7  <u>If to Palomar Transfer Station, Inc</u>:

8  Neil Mohr
    General Manager
9  Republic Services
    8514 Mast Blvd
10  Santee, CA 92071
11  Email: nmohr@republicservices.com

12

13  <u>With Copies to</u>:

14  Judith George / Tom Ulreich-Power
    General Counsel's Office
15  Republic Services
    18500 North Allied Way
16  Phoenix, AZ 85054
17  Email: Jgeorge4@republicservices.com
    Email: Tulreich@republicservices.com
18

19  Tom Bruen
20  Law Offices of Thomas M. Bruen, P.C.
    1990 North California Blvd., Suite 608
21  Walnut Creek, California 94596
22  E-mail: tbruen@tbsglaw.com

23

24  <u>If to Coast Waste Management, Inc</u>:

25  Ken Ryan
    District Manager
26  Coast Waste Management, Inc.
    5960 El Camino Real
27  Carlsbad, CA 92008
28  Email: KRyan@wm.com

Consent Decree                 24                Civil Case No. 3:19-cv-00957-JM-LL

1

2   With Copies to:

3   Catherine Riegle Finley, Esq.
    Senior Legal Counsel
    Waste Management
4   9081 Tujunga Ave.
    Sun Valley, CA 91352
5   E-mail: CRiegle@wm.com

6

7   Kimberly Bick
    Bick Law LLP
8   520 Newport Center Drive
    Suite 750
9   Newport Beach, California 92660
10  Email: kbick@bicklawllp.com

11

12  50.    Notifications of communications shall be deemed submitted three (3) business

13  days after having been sent via U.S. mail or the day of sending notification or

14  communication by electronic mail.   Any change of address or addresses shall be

15  communicated in the manner described above for giving notices.

16  51.    Effect of Consent Decree. Except as provided herein, Plaintiffs do not, by their

17  consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance

18  with this Consent Decree will constitute or result in compliance with any federal or state

19  law or regulation.  Nothing in this Consent Decree shall be construed to affect, limit, or

20  increase in any way the obligation of Defendants to comply with all federal, state, and local

21  laws and regulations governing any activity required by this Consent Decree.

22  52.    Counterparts. This Consent Decree may be executed in any number of

23  counterparts, all of which together shall constitute one original document.  Telecopy, email

24  of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally

25  executed counterparts of this Consent Decree.

26  53.    Modification of the Consent Decree. This Consent Decree, and any provisions

27  herein, may not be changed, waived, discharged, or terminated unless by a written

28  instrument, signed by the Parties.

1    54.    Full Settlement. This Consent Decree constitutes a full and final settlement of
2    this matter.

3    55.    Integration Clause. This is an integrated Consent Decree.   This Consent
4    Decree is intended to be a full and complete statement of the terms of the agreement
5    between the Parties and expressly supersedes any and all prior oral or written agreements,
6    covenants, representations, and warranties (express or implied) concerning the subject
7    matter of this Consent Decree.

8    56.    Authority of Counsel. The undersigned representatives for Plaintiffs and
9    Defendants each certify that he/she is fully authorized by the Party whom he/she represents
10   to enter into the terms and conditions of this Consent Decree.

11   57.    Authority of Parties. Each Party certifies that its undersigned representative(s)
12   is fully authorized to enter into this Consent Decree, to execute it on behalf of that Party,
13   and to legally bind that Party to the terms of this Consent Decree.

14   58.    The Parties, including any successors or assigns, agree to be bound by this
15   Consent Decree and not to contest its validity in any subsequent proceeding to implement
16   or enforce its terms.

17   **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree
18   as of the date first set forth below.

19

20   APPROVED AS TO CONTENT

21   Dated:    5/25/19                    By: _____
22                                        Name: Catherine Stiefel
23                                        Title: President
                                          San Diego Coastkeeper
24

25   Dated: _____              By: _____
26                                        Name: _____
27                          T             Title: _____
                                          Coastal Environmental Rights Foundation
28

---

Consent Decree                    26          Civil Case No. 3:19-cv-00957-JM-LL

54.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

55.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

56.    <u>Authority of Counsel</u>. The undersigned representatives for Plaintiffs and Defendants each certify that he/she is fully authorized by the Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

57.    <u>Authority of Parties</u>. Each Party certifies that its undersigned representative(s) is fully authorized to enter into this Consent Decree, to execute it on behalf of that Party, and to legally bind that Party to the terms of this Consent Decree.

58.    The Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____          By:_____
                                 Name:_____
                                 Title:_____
                                 San Diego Coastkeeper

Dated:    __7/9/2019_____      By: _____
                                 Name: Sara Kent_____
                             T   Title:_Programs Director_____
                                 Coastal Environmental Rights Foundation

Consent Decree                      26                Civil Case No. 3:19-cv-00957-JM-LL

1

2  Dated: _July 8, 2019_          By: _____
                                  Name: _Tim Oudman_
3                              T  Title: _Vice President_
                                  Palomar Transfer Station, Inc.
4

5

6  Dated: _____          By: _____
                                  Name: _____
7                              T  Title: _____
8                                 Coast Waste Management, Inc.

9

10

11 **APPROVED AS TO FORM**

12 Dated: _____          By: _____
                                  Livia Borak Beaudin
13                                Coast Law Group LLP
                                  Attorneys for CERF
14

15

16 Dated: _____          By: _____
                                  Matt O'Malley
17                                Attorney for San Diego Coastkeeper
18

19 Dated: _____          By: _____
                                  Kimberly Bick
20                                Bick Law LLP
                                  Attorney for Coast Waste Management, Inc.
21

22

23 Dated: _July 8, 2019_          By: _Thomas Bruen_
                                  Tom Bruen
24                                Law Offices of Thomas M. Bruen, P.C.
                                  Attorney for Palomar Transfer Station, Inc.
25

26

27

28

Consent Decree                  27          Civil Case No. 3:19-cv-00957-JM-LL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: _____

T

By: _____
Name:_____
Title:_____
Palomar Transfer Station, Inc.

Dated: JULY 1, 2019

T

By: _____
Name: PETE DELLMOLOSER
Title: VP, ASST SECRETARY
Coast Waste Management, Inc.

APPROVED AS TO FORM

Dated: _____

By: _____
Livia Borak Beaudin
Coast Law Group LLP
Attorneys for CERF

Dated:. _____

By: _____
Matt O'Malley
Attorney for San Diego Coastkeeper

Dated: June 28, 2019

By: Kimberly Lene Bick /s/ 2k4
Kimberly Bick
Bick Law LLP
Attorney for Coast Waste Management, Inc.

Dated: _____

By: _____
Tom Bruen
Law Offices of Thomas M. Bruen, P.C.
Attorney for Palomar Transfer Station, Inc.

1

Dated: _____                    By: _____
2                                          Name:_____
3                            T             Title:_____
                                           Palomar Transfer Station, Inc.
4

5

6   Dated: _____                    By: _____
7                                          Name:_____
                             T             Title:_____
8                                          Coast Waste Management, Inc.

9

10

11  APPROVED AS TO FORM

12  Dated: _____7/9/2019_____            By: _____
13                                         Livia Borak Beaudin
                                           Coast Law Group LLP
14                                         Attorneys for CERF

15

16  Dated: _____                    By: _____
17                                         Matt O'Malley
                                           Attorney for San Diego Coastkeeper
18

19  Dated: _____                    By: _____
20                                         Kimberly Bick
                                           Bick Law LLP
21                                         Attorney for Coast Waste Management, Inc.

22

23  Dated: _____                    By: _____
24                                         Tom Bruen
                                           Law Offices of Thomas M. Bruen, P.C.
25                                         Attorney for Palomar Transfer Station, Inc.

26

27

28

---

Consent Decree                    27              Civil Case No. 3:19-cv-00957-JM-LL

1

Dated: _____                    By: _____
2                                            Name:_____
3                                      T     Title:_____
                                             Palomar Transfer Station, Inc.
4

5

6

Dated: _____                    By: _____
7                                            Name:_____
                                       T     Title:_____
8                                            Coast Waste Management, Inc.

9

10

11   APPROVED AS TO FORM

12   Dated: _____                By: _____
13                                           Livia Borak Beaudin
                                             Coast Law Group LLP
14                                           Attorneys for CERF

15

16   Dated:    7/9/19                        By: _____
17                                           Matt O'Malley
                                             Attorney for San Diego Coastkeeper
18

19
     Dated: _____                By: _____
20                                           Kimberly Bick
                                             Bick Law LLP
21                                           Attorney for Coast Waste Management, Inc.
22

23   Dated: _____                By: _____
24                                           Tom Bruen
                                             Law Offices of Thomas M. Bruen, P.C.
25                                           Attorney for Palomar Transfer Station, Inc.
26

27

28

---

Consent Decree                    27              Civil Case No. 3:19-cv-00957-JM-LL

1   **IT IS SO ORDERED.**

2

3   Date: _9/10/19_

4                                        Judge Jeffrey T. Miller

5                                        United States District Court Judge
                                         Southern District of California

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Consent Decree                    28              Civil Case No. 3:19-cv-00957-JM-LL

# Exhibit A

**Exhibit A**

- **Good housekeeping and exposure minimization BMPs:**

    1. Transfer Station
        - Staff educated to store deposited material (e.g., recyclables, solid waste, green waste, etc.) within the building under cover at all times unless operationally infeasible
        - If material cannot be stored under cover, tarps will be placed over material during precipitation events when feasible
        - Increased sweeping around the area when necessary
        - Rumble strips will be added at the back exit to minimize material tracking from the site
    2. Scale House
        - Signage will be posted encouraging customers to cover the material in their truck beds prior to entering the site
    3. Mattress Storage Area
        - Mattresses stored under cover or tarped when feasible and prior to rain events
    4. Can Crusher Area / Recyclables Storage and Transfer
        - Can storage areas located under cover when feasible
        - Public and staff educated to load/unload cans and recyclables under cover when feasible
        - Staff educated to minimize loading of recyclable material during rain events and will keep bins covered when feasible
    5. Tire Shop
        - Canopy extended to cover tire storage area
    6. Container and Vehicle Wash Rack with 2-Stage Clarifier
        - Additional barrier installed to keep wash water within contained area
        - Staff educated on preventing unauthorized non-stormwater discharges from the wash area

- **Structural BMP Feasibility Evaluations:**

    1. Offsite discharge to MS4 and/or current discharge location
        - Perform a structural treatment BMP planning and feasibility assessment to evaluate the feasibility and permitting requirements for segregation of non-industrial stormwater, collection and consolidation of industrial stormwater (i.e., by installing new conveyances and pump stations), and storage and treatment of industrial stormwater to meet the IGP numeric action levels (NALs) and consent decree numeric levels (NLs) for offsite discharge to the MS4 and/or current discharge location
        - Evaluate cost and potential implementation schedule

2. Offsite discharge to sewer
   - Evaluate the potential for the City of Carlsbad to relax the existing prohibition on stormwater discharges into the sanitary sewer collection system[1], and if potentially feasible, evaluate the non-industrial stormwater segregation, industrial stormwater collection/consolidation, and industrial stormwater storage/equalization infrastructure required to meet the sanitary discharge rate requirement
3. Divert Non-Industrial Stormwater to MS4 System
   - Evaluate the potential to route the stormwater from the employee parking area to the MS4 as non-industrial stormwater
   - Evaluate cost and potential implementation schedule

---

[1] A recent white paper led by Los Angeles region water districts evaluated the feasibility and benefits of stormwater diversion to the sanitary sewer, a concept receiving increased attention and traction as a means to improve water supply augmentation and for wastewater treatment operators to maintain desired treatment flowrates under drought conditions, where conservation efforts have reduced and concentrated pollutants in the sanitary flows (http://safecleanwaterla.org/wp-content/uploads/2018/05/Las-Virgenes-MWP-San-Gabriel-Basin-Watermaster-Central-Basin-MWP-SCWLA-Comments-.pdf)

# Exhibit B

